UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-61016-CIV-COHN/SELTZER

CHRISTOPHER BERNARD FULLER, SR.,

    Plaintiff,

v.

BROWARD COUNTY MASS TRANSIT
(OFFICE OF TRANSPORTATION) and
AMALGAMATED TRANSIT UNION
LOCAL 1267,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT BROWARD COUNTY MASS TRANSIT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant Broward County Mass Transit's Motion for Summary Judgment [DE 45]. The Court has considered the Motion and related exhibits, Plaintiff's Response [DE 49] and related exhibits, Defendant Broward County Mass Transit's Reply [DE 52], the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

**1.**   **Undisputed Material Facts**

Plaintiff was hired as a bus operator with Broward County Mass Transit ("BCMT") on March 27, 2006. (DE 45 at 1.) Plaintiff went through a two-month training period which he completed on May 19, 2006. (See Attachment A to DE 49.) Plaintiff's employment continued on a probationary period scheduled to end on November 19, 2006. (See id.) The purpose of the probationary period is to provide a trial period during which BCMT management can evaluate a new bus operator's ability,

competency, fitness, and other qualifications to perform the work for which he or she is employed. (Exhibit C to DE 45.) Plaintiff called in sick during his probationary period on May 27, June 6-24, July 12, 14, August 23, 26, September 12, 20, 23 and October 14. (See Exhibit D to DE 45.) Plaintiff was also excused without pay on August 5, 7. (Id.) On August 26, 2006, after Plaintiff's fifth sick occurrence, he was placed on BCMT's sick leave monitoring program. (DE 45 at 2.) Plaintiff does not dispute the absences, however, he asserts that he "provided doctors lines that were rejected on most occasions by Superintendent Patrick Cunningham." (DE 49 at 2.) Plaintiff claims that it was Mr. Cunningham's rejection of Plaintiff's doctors lines which led to "the activation of" BCMT's sick leave monitoring program. (Id.)

On July 28, 2006, Plaintiff received his two-month evaluation. (Exhibit E to DE 45.) Plaintiff received a "below average" rating in attendance and "acceptable" ratings with respect to the remaining categories. (Id.) On September 25, 2006, Plaintiff received his four-month evaluation. (Exhibit G to DE 45.) Plaintiff received a rating between "poor" and "below average" in attendance and "acceptable" ratings with respect to the remaining categories. (Id.) On October 18, 2006, a decision was made by Christopher Walton, Director of Mass Transit, that Plaintiff did not meet the expectations of the office and his probation would be rejected. (Exhibit H to DE 45.) As a result, Plaintiff's employment with BCMT was terminated. On October 18, 2006, Plaintiff met with BCMT's Superintendent of Mass Transit, Pat Cunningham, and Assistant Superintendent of Mass Transit, Carmen Arnoni, and Plaintiff was informed that his probation was rejected "due to excessive absenteeism." (Exhibit B to DE 45 ¶ 8.) On November 9, 2006, Plaintiff filed an internal complaint with the Broward County Office of Equal Opportunity alleging that his probation was rejected because of race discrimination. (See Exhibit J to DE 45.)

Following his termination as a bus operator, Plaintiff applied with BCMT for a

2

Coach Service Attendant position, which is an employee that fuels and cleans the buses. (Id.) Based on this application, Plaintiff's name appeared on three separate lists on BCMT's job computer system for three Coach Service Attendant positions. (Id.) The first position was listed on November 15, 2006, the second on January 22, 2007, and the third position was listed on March 28, 2007. (Id.)

Plaintiff was originally scheduled to interview for the first position on November 30, 2006, however, he did not appear for the interview. Joyce A. Mack, an employee of BCMT who sits on a three-person panel that conducts the interviews, stated in her declaration that Plaintiff's reason for missing the interview was "that he forgot." (Exhibit K to DE 45 ¶ 7.) On December 13, 2006, Plaintiff was interviewed by the three-person panel for the Coach Service Attendant position. (Id. ¶ 8.) Plaintiff was late for the December 13, 2006 interview. (Id. ¶ 9.) During the interview process, each member of the panel asked questions and rated the answers. (Id. ¶ 6.) After the interview, a final score for each applicant is tallied and provided to a manager to review. (Id.) According to Ms. Mack, the applicant ultimately selected for the position "arrived early to the interview and was scored higher than Mr. Fuller by the interview panel." (Id. ¶ 11.) Ms. Mack further stated that "[a]t the time of Mr. Fuller's interview [ ] and during these hiring decisions, the interview panel was unaware of any internal complaint that Mr. Fuller had submitted to the County Office of Equal Opportunity." (Id. ¶ 14.)

On January 22, 2007 and April 12, 2007, Plaintiff was scheduled for interviews for the second and third positions listed for a Coach Service Attendant. (Id. ¶¶ 12-13.) Plaintiff did not participate in an interview for either position. (Id.)

On October 5, 2007, Plaintiff filed a complaint alleging race discrimination and retaliation with the Florida Commission on Human Relations which was dual-filed with the Equal Employment Opportunity Commission. (See Exhibits O & P to DE 45.)

2.  **Procedural History**

On July 2, 2008, Plaintiff filed his Complaint [DE 1] *pro se* naming BCMT and the Amalgamated Transit Union Local 1267 ("Union") as Defendants and alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964. Each Defendant filed a motion to dismiss the Complaint. On January 16, 2009, this Court entered (1) an Order [DE 35] dismissing the Complaint in its entirety against the Union, and (2) an Order [DE 34] dismissing four of the five counts alleged against BCMT, allowing only Plaintiff's relation claim to survive.

On February 13, 2009, Plaintiff filed his Amended Complaint [DE 36], which attempted to cure the deficiencies identified by the Court concerning Plaintiff's claims against the Union. On February 23, 2009, the Union filed a Motion to Dismiss the Amended Complaint [DE 38], which this Court granted on April 24, 2009. (See DE 40.) Accordingly, the only claim that remains at issue in this case is Plaintiff's retaliation claim against BCMT. BCMT filed the instant Motion for Summary Judgment on May 13, 2009. Both parties, including Mr. Fuller acting *pro se*, have done an admirable job in presenting the matter for this Court.

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To

discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## III. ANALYSIS

Under Title VII, it is unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation a plaintiff must show that: (1)

he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997); Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). The plaintiff "need not prove the underlying claim of discrimination which led to [his] protest;" however, the plaintiff must have had a reasonable good faith belief that the discrimination existed. Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation and citation omitted).

In order to meet the causal link requirement, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). The plaintiff must, however, at least demonstrate that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (quotations and alterations omitted). "That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 798 (11th Cir. 2000). The defendant's awareness can be established by circumstantial evidence. Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).

If the plaintiff establishes his *prima facie* case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. Reichhold

Chemicals, 988 F.2d at 1571-72. If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. Meeks, 15 F.3d at 1021; Goldsmith, 996 F.2d at 1163 (11th Cir. 1993).

Turning to the facts of this case, Plaintiff fails to establish a *prima facie* case of retaliation because he did not demonstrate that the decision makers were aware of the complaints Plaintiff filed. BCMT submitted the Declaration of Joyce A. Mack which states that "[a]t the time of Mr. Fuller's interview [ ] and during these hiring decisions, the interview panel was unaware of any internal complaint that Mr. Fuller had submitted to the County Office of Equal Opportunity." (Exhibit K to DE 45 ¶ 14.) Plaintiff has failed to contradict this evidence and, therefore, BCMT is entitled to summary judgment on Plaintiff's retaliation claim. See, e.g., Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988) (affirming grant of summary judgment to the defendant on retaliatory discharge claim where there was uncontradicted evidence that the decision makers were unaware of the plaintiff's threat to file an EEOC charge).

In addition, even assuming that the decision makers were aware of the complaints, BCMT has offered legitimate reasons why Plaintiff was not selected for the Coach Service Attendant position. BCMT argues that "Plaintiff was not selected for the position because (1) he was late to the December 13, 2006 interview; (2) he was scored lower than the applicant selected; (3) the applicant selected arrived early to the interview; and (4) Plaintiff did not show up to the actual interview for the other Coach Service Attendant positions." (Reply at 2-3.) BCMT has also set forth case law finding similar reasons to be legitimate. See Hickman v. City of Dayton, Ohio, 39 Fed. Appx.

243 (6th Cir. 2002) (finding plaintiff was unable to rebut defendant's legitimate non-discriminatory reason for failing to promote him where plaintiff arrived late and performed poorly during an interview); Cone v. Health Management Associates, Inc., 2007 WL 1702867 (N.D. Ga. June 11, 2007) (arriving late to an interview is a legitimate, non-discriminatory reason for deciding not to hire plaintiff); Furgess v. United Parcel Service, Inc., 2006 WL 3192542 (D.S.C. Nov. 1, 2006) (finding plaintiff did not state *prima facie* case where he completed an on-line application for the position but failed to schedule an interview and submit a written application).

Plaintiff asserts that he was qualified for the Coach Service Attendant position based on the fact that BCMT had hired Plaintiff as a bus operator. (DE 49 at 8.) Plaintiff argues that it is "ridiculous" for BCMT to argue that Plaintiff "became less qualified to clean and fuel buses because he arrived at an interview late." (Id.) However, BCMT has never argued that Plaintiff was not qualified for the Coach Service Attendant position, but only that the applicant, who was offered the position that Plaintiff interviewed for, arrived early for the interview and scored higher than the Plaintiff. Plaintiff has failed to point to evidence contradicting these legitimate, nondiscriminatory reasons regarding why Plaintiff was not offered the Coach Service Attendant position. Accordingly, BCMT is entitled to summary judgment. See Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1309 (11th Cir. 2007) (finding that a plaintiff's evidentiary offerings "do not raise questions about the truthfulness of any of the proffered reasons," thus plaintiff "fail[ed] to rebut each of the legitimate, nondiscriminatory reasons").

The Court does not question Plaintiff's good-faith belief that he experienced retaliation as a result of his discrimination complaints. However, the Court finds that the evidence on record does not meet the level required to survive summary judgment.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Broward County's Motion for Summary Judgment [DE 45] is **GRANTED**. The Court shall enter a separate judgment order consistent with the above ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 28th day of July, 2009.

JAMES I. COHN
United States District Judge

Copies provided to:

Christopher Bernard Fuller, Sr., *pro se*
7806 Northwest 39th Court
Coral Springs, FL 33065

Counsel of record via CM/ECF